Thank you, Your Honors. This case... Could you state your name? I'm sorry. Julian Quattlebaum for the appellant. This case involves a question of state law, which I believe the Ninth Circuit has previously gotten wrong, and every federal... A good way to start. What's that? A good way to start. Well, I'm sorry, but it's the case. You may be right, but you'll be bound by what's wrong. What we have here is a very clear conflict between the federal courts and the state courts. But the question here is a question of state law, and... As Judge Kleinfeld alluded to, that's a conundrum for us because we're bound to follow our precedent. So how do we procedurally, if we agree that maybe the Ninth Circuit precedent is divergent from California law, how do we get around following our own precedent? Well, there's an exception to that rule, and that is if the appellate courts of the state of California have indicated that that precedent is wrong, then you are not bound to follow it at all. In fact, you're bound to not follow it. Is it the appellate courts? Yes. So what case tells us if the appellate courts inform us that our precedent is inconsistent with California law, rather than the California Supreme Court telling us that, that we are bound to overrule our precedent? Excuse me just a second. I will have to look that particular case up. Well, I don't want you to spend your time. It is in the brief, though, Your Honor. Perhaps in rebuttal you can come back. Okay. But there are at least three Court of Appeal cases that have cast serious doubt on particularly the application of Marin Tug to the facts in this case. Is casting serious doubt enough, or does it have to be? No, it specifically said that's just not right. It's not what California law is. Okay. Let me make sure I understand your argument. You're not conceding that there's no Ninth Circuit case that helps your Strangers of the Contract theory, are you? No, there are some more recent ones that are out of the district court. We've got United National Maintenance Incorporated that came out in August of 2014 that talks extensively about the dicta in Martin Tug. Right. But this is a contractual interference case. Marin Tug was not a contractual interference case. It was a case involving tortious interference with prospective economic advantage. And, in fact, it really wasn't even that. It was a refusal to deal case. Let me back off for a moment on this problem of whether Marin Tug erred in construing California law. I think that's quite a plausible argument, that it did err. And I understand your theory for why, since our job is to predict what the California Supreme Court would do, we should take our guidance from the CALAP cases. I understand that argument, too. But let me back off to a kind of proceeding issue. The issue is whether a stranger to the contract was interfering with the advantageous contractual relationship of Ing, or whether a party with an interest in the contract was interfering with the advantageous contract relation of Ing. And I have trouble seeing what stranger to the contract there is. It looks like the lender that was bailing out this developer had a bunch of related, both affiliated and subsidiary corporations, and they're all just protecting their interest in getting their money paid back, which would fall right within what isn't tortious interference with advantageous contractual relations, because they're protecting their own interest as a lender, as part of the lending combination of deals. What am I misunderstanding there? First of all, under applied equipment, stranger to the contract simply means someone who is not a party to the contract at issue. That's all it means. There is nothing in... If a lender has affiliates and subsidiaries, they're strangers? Yes, if they aren't a party to the contract. The reason is because under applied equipment, what the court held was that you could not be liable for conspiracy to interfere with a contract to which you were a party. And the reason is because if you could turn what was purely and simply a contract claim into a tort claim, then the normal law with respect to contract liability would never apply. And that's not what's happened here at all. We did not have a party to the contract that interfered with the contract. What it looked to me like, and it's really complicated, so I may misunderstand it, and I really want some education from you. What it looked to me like was you've got a developer that's run short of money, Wells Fargo bails him out, and Wells Fargo, like all banks and all lenders that bail out developers in that situation, makes sure it's fully secured and makes sure that it comes first. Well, first of all, it was not a developer that had run out of money. It was a lender who then agreed to make loans to developers and then turned around and borrowed the funds to make those loans through a line of credit with Wells Fargo. The developer had agreed to pay Mr. Ng, a brokerage commission, for arranging that loan. The terms of the deal were that Mr. Ng would be paid his fee as draws were made on that loan. So what you're saying is I am missing the intermediary here by treating the intermediary as though it were the developer. The developer, one of the two contracts at issue, there was a contract between the developer and the intermediate lender, who was not a Wells Fargo affiliate. But the developer had an agreement directly with Mr. Ng, and certainly Wells Fargo was not a party to that agreement at all. So Ng's deal is with the developer? Yes. And the intermediate lender, not the developer, runs out of money and goes to Wells Fargo for some. And then Wells Fargo assures that the money that it lends to the intermediate lender goes back first to Wells Fargo. I need to stop you for a second because the timing is critical here. The whole arrangement was put in place at the outset. In other words, Mr. Ng arranged this funding for the developer with RE loans. RE loans then entered into the line of credit with Wells Fargo's subsidiary in order to fund its loans then to the developer. That was a separate transaction, though, right? That's right. So Mr. Ng basically got this deal, and he was going to be paid a good sum of money for brokering this loan. And that money was going to come out of the draws. As the draws were being made, a percentage would go to Mr. Ng. That's right. And they were the draws that the developer was making from RE loans. And the RE loans would then, pursuant to its line of credit with Wells Fargo, would go get those monies from Wells Fargo. How much time passed between the negotiation of this original deal and when Wells Fargo came into the picture? They were in the picture right up front initially. None of the transactions happened one before the other. They all happened at the same time. Wells Fargo approved the arrangement between RE loans and the developer, which included the payments out of the draws that the developer made from RE loans. A percentage went to Mr. Ng. All of that was something that, as part of the overall unified deal, Wells Fargo agreed to. They approved that before they agreed to enter into the line of credit with RE loans. So your theory of stranger to the contract is that Wells Fargo is a stranger to which contract? The one between Mr. Ng and the developer? They're a stranger to two contracts. One, the contract between RE loans and the developer, Rancho Los Flores, of which Mr. Ng was an intended third-party beneficiary. That agreement specifically said that a portion of the proceeds, the draws that the developer made, would go to Mr. Ng. In addition, there was an agreement, obviously, between Mr. Ng and the developer. If nothing else, there was a written note that said he was to be paid out of the draws that the developer received. So there were two contracts, neither of which was Wells Fargo a party to. The reason it's so important that you realize that under applied equipment, stranger to the contract meant simply somebody who was not a party to the contract, is because applied equipment said, look, you can't let somebody who was a party to the contract have a right to sue and tort for tortious interference with their own contract, because otherwise, you know, the whole idea behind limited contractual remedies that are specified within the contract would be thrown out the window and they'd be able to get all sorts of damages under tort law that were never contemplated by the parties when they crafted their contract. The problem with this case is that Mr. Ng isn't in privity with Wells Fargo and has no contract claims to bring against Wells Fargo. So if he can't bring a tort claim against Wells Fargo, he has no claim against Wells Fargo. That can't be the law. What about the separate defense of privilege? Well, but that's a defense. This is a motion to dismiss. That's not in our complaint. That can be on the pleadings. Yeah, but it's not in this case. And that would take all kinds of factual discovery to be able to determine. I mean, that is a complicated issue. It's a balancing test. We don't even know all the facts. We know a few. We think there's a lot more out there based on what we do know about. We haven't had a chance to do any discovery to try to get to the bottom of it. And obviously the question is whether or not what Wells Fargo did. So there could be privilege. There could be. Theoretically, but. But it's a question of whether they were pursuing their legitimate interests. Our argument is that they were not pursuing their legitimate interests. They were engaged in activities that were wrongful. Counsel, I'm sorry. And I would like to reserve some time for rebuttal, please. It wasn't pleaded, right? Privilege wasn't pleaded. No. I'm sorry. That's all right. Counsel, do you still maintain your jurisdictional argument? Well, I would love for the Ninth Circuit to reconsider the issue. But in fairness to the appellate, they did not respond to our briefing there. So. That's an issue that's always in play. We have to determine our jurisdiction. Sure. Well, I think. That's why I was asking you, do you maintain. Certainly I do. I certainly do. All right. Thank you. And I would appreciate it if the court would consider that. Thank you. All right. May I reserve the remaining two minutes? Of course. Thank you. So he started by telling us we were wrong. Are you going to start by telling us we're right? You are right. You're right. Good morning. Danny Ashby for the Wells Fargo Defendants. And may it please the court. We recognize, of course, there have been significant developments in the law since the briefing in this case closed. At the time of briefing, the case was controlled by Marin Tugg. That's no longer the case. The case is now controlled by Fresno Motors and United National Maintenance. And under both of those decisions, the district court's judgment should be affirmed. Because the rules articulated in those two cases confirm that Wells Fargo cannot be liable for tortious interference with contract under California law. Yes, it is, counsel. This was a first amended complaint that's at issue, right? Was there another motion to dismiss previously? There was, Your Honor. And did you attempt, I suppose successfully, to knock out the breach of contract claim? They didn't assert a breach of contract claim in the first complaint. It was only tortious interference. And I think maybe interference with prospective economic advantage. And then in the first amended complaint, the only thing that was asserted was a tortious interference with contract claim and then a negligent interference with contract claim, which is not the subject of the appeal. Do you agree that privilege is not at issue right now, that it's not been pleaded? It is at issue in this sense, Your Honor. Under California law, which is the authority that Mr. Quadamon relies upon, in California state court, you cannot move to dismiss based on an affirmative defense. But in federal court, of course, under 12b-6, if the defense appears on the face of the complaint, you can. Let's say you can. Let's say you can. Was it pleaded as an affirmative defense? We never filed an answer, Your Honor. But the point is because the You can't have a dismissal on the pleadings if there's no pleading, I don't suppose. You can if it appears on the face of his complaint. And his complaint very clearly alleged I'm sorry, Your Honor. Why would privilege appear on the face of the complaint? It appears on the face of the complaint because the privilege here would be that under United National Maintenance, one cannot be liable in tort for interfering with the performance of its own contract and by extension also cannot be liable for interfering with third-party contracts if that claim hinges on the defendant's failure to perform a contract. Wells Fargo was not a party or is not a party to the Rancho loan transaction, right? Correct, Your Honor. So Mr. Encamp sued Wells Fargo for breach of contract. Correct. He has no contractual claim. So now you're saying he has no tort claim as well. That is correct. Then doesn't he fall between that gap that's talked about in United National Maintenance? He does not because he has a contract claim against Rancho who didn't pay his commission. Rancho, if they think REL did something wrong, has a contract claim against REL and REL has a contract claim against Wells Fargo. So even if the allegation is that Wells Fargo interfered with his contractual relationship with the developer, he has no remedy in contract or in tort law. He's going to have to go after the developer. That's his only option? That's your answer? What Mr. Quattlebaum is arguing, what Mr. Ng is arguing, is that if we're not a party to the contract, then any action we take that causes that contract to be breached makes us liable for tortious interference. Let me give you a hypo here. I'm not sure I understand things, so maybe this hypo will make it easier. Suppose Ng had a contract with the developer that the developer has to pay him a couple million dollars for securing the, what was it, the RE? RE loans. RE goes to Wells Fargo for the money. And understand, I'm talking hypothetically. We can get later to whether I've got the facts right. I know that I don't, actually. I'm making a hypo. And then suppose Wells Fargo communicates and sends a letter and a CC to the developer and to RE, saying, yeah, we'll lend you the 40 million bucks that you need, but you can't pay Ng. We don't like Ng, and we don't like his deal. We'll lend the money so long as you don't pay Ng. Since Ng is not in any kind of contractual relationship with Wells Fargo, why wouldn't that rule out, or rule in, rather, an interference with contractual relations claim unless privilege rules it out? It would not. You're right, Your Honor. It seems to me in that hypothetical, Ng would indeed be a victim of a tortious interference with his advantageous contractual relationship with the developer unless Wells Fargo was privileged to condition its loan to RE on breaching with Ng. Have I got that right so far? Yes, Your Honor. Now, why isn't this case like that hypothetical case? Well, again, to your point about privilege, I mean, in the hypothetical that you gave, there would be no basis on which Wells Fargo would be required to lend the money so that it could be paid to Ng. They can dictate the conditions under which the loan would be made. So the case really turns on privilege, then, rather than privity. That's correct. I mean, these are privilege and justification defenses. That's really what not a stranger is. The fundamental problem with Marin Tug is it articulated an economic interest standard that was potentially so broad that you could always find that you had a claim that you had an economic interest in causing the breach of a contract, and that clearly couldn't be the rule. But isn't privilege an affirmative defense? I'm sorry, Your Honor? Isn't privilege an affirmative defense? It is an affirmative defense. So what does that have to do with the 12B6 dismissal? Because in the 12B6 context, you're looking at the allegations in the complaint, right? And so the allegation is that Wells directed RE loans not to use the funds advanced under the line of credit to pay compensation for Ng. How is that any different than Judge Klinefeld's hypothetical? Well, again, you're absolutely right. This is a privilege issue, a privilege and justification issue. That is an affirmative defense. But it's very well settled in the U.S. Supreme Court that where allegations in the complaint suffice to establish the defense, which is exactly the case here as established in paragraph 14 of the First Amendment complaint, we have a privilege and or are justified in what we did. What words do you think in paragraph 14 establish the privilege? Well, it's very clear in paragraph 14 that what is being alleged is that the Rancho contract and his third-party beneficiary status and his ability to be paid depended entirely on Wells Fargo's contract. And under United National Maintenance, the court was clear following PM Group, a court of appeals decision, that says you cannot be tortiously liable for breaching your own contract or for breaching any contracts where that claim hinges on you breaching your own contract. But it won't be breaching its own contract. If Wells Fargo says, we'll loan you the $40 million, but only if you toss Ng out without his money. Well, if they're not arguing that we breached our contract with RE loans and that that caused the tortious interference, then they have to be. Hypothesized would not be a breach. Right. Then they have to be arguing that we exercise our rights under the contract. And if that's the case, then Fresno Motors and Imperial Ice would clearly bar the claim because it's not possible to tortiously interfere with someone's contract by exercising rights under your own contract. Counsel, would you agree that neither United National Maintenance nor Fresno Motors purported to overrule Marantug? Yes, I would agree with that. And so where does that leave us in terms of reconciling those three cases? Those two cases. Those three cases. Well, I was going to say Fresno Motors and United National Maintenance certainly criticize some of the reasoning in Marantug, but they do not overrule the case. But I certainly agree that to the extent United National Maintenance said that any discussion about economic interest in Marantug is dicta, that is the law of the circuit. And so we are bound by we either win under Fresno Motors and United National Maintenance or we don't. We don't have an argument any longer that we would win under Marantug, I guess is the point. All right. And so do you agree with opposing counsel that if the courts of appeal in California tell us that our, excuse me, precedent is wrong, that we must reverse it? Yes. This court would have an obligation if the court of appeals were saying that Marantug was wrongly decided. The court would have an obligation to follow the court of appeals president unless this court were to find convincing evidence that the California Supreme Court would reach a different conclusion. All right. Yes. Counsel, you argued that you can't be liable for intentional interference with a contract if you're exercising your rights under the contract. I take it that Wells Fargo is exercising it right. Could Wells Fargo have exercised its rights under the contract without directing that the payments not be paid to Ing? Well, this is the problem. It's not clear if he's alleging that we were exercising our rights under the contract or whether we breached our contract. To the extent we were exercising our rights under the contract, and that's the plaintiff's theory, then the tortious interference claim would be barred by Fresno Motors and Imperial Ice, which says you cannot tortiously interfere with another contract by virtue of exercising rights under your contract. I'm not sure that answers my question. So the allegation that Wells Fargo directed that the money not be paid to Ing, is that an exercise of Wells Fargo's rights under the contract, or is that an allegation that, if proven, could be sufficient to establish intentional interference with the contract? No, it is an exercise of our rights under our contract, but the reason I'm hesitant to say that is because this is the motion to dismiss stage, and that's not in the record. I'm not sure that I understand why whatever Wells Fargo does is going to be privileged in this context. Let me hypothesize. Same hypo I gave you before, but Wells Fargo goes even further. They say not only can't you pay the money that you owe Ing already, the way it's set up in your deal for monthly payments to Ing or whatever it was, also you have to stall your suppliers. When they invoice you, you can't pay within 30 days, because we want to get a little ahead on our loan. You stall all your suppliers for 90 days. None of them are going to file mechanics liens and tie up our security much faster than that. So you have basically Wells Fargo saying, well, yeah, we'll loan the money, but only on condition that you breach your contract with Ing and also with the developer's suppliers. I don't know the law, and I'd like you to educate me on it, but I kind of doubt that the law is that since that's Wells Fargo's contract, it can condition it that way without being liable for tortious interference with the supplier's contracts. I would guess that some factual development would be needed to see whether there was any justification. Now, there could be if the project was rife with corruption and there had been a whole bunch of kickbacks. There could be. But whether there was or not, it seems to me would be an intricate, factual matter. Is that wrong? What is the law on that? I don't think that's wrong, Your Honor, at all, but what did not happen here is we did not condition our loan on anything. You didn't condition your loan on stalling the payments to Ing until you got your money? No. What happened was after the loan was made, when it was clear that they weren't going to be able to pay the interest that was due on the loan, we instructed them to apply the monies to the interest and not to pay the commission. When we were insisting on compliance with our contract, that our interest be paid. Let me make sure I understand what you just said. Yes. When the loan was made, it was fine to pay Ing his monthly fees, but then when they defaulted, Wells Fargo told the intermediate lender and the developer, you've got to stall the payments that you owe to Ing until our interest is caught up. Not the developer, our borrower. We told our borrower, do not use Wells Fargo money to pay Ing. This is what's alleged in the complaint. To pay Ing, the money needs to go to pay down the interest due on the note, in which we had a security interest. Not only on the agreement with REL, but we also had a security interest in the Rancho lien. Was there a term in the loan deal that said that if there's a default, Wells Fargo can direct that no draws be made for purposes other than paying its interest if its interest is in default? Absolutely. The bank has all kinds of remedies that would permit this. And in addition, any time there's a default, as you might imagine, there's usually an amendment to the credit agreement, a forbearance agreement, impose the certain conditions, and there were a number of those in this case, too. I know banks always want to do that as a practical matter. Sometimes they have the paperwork for it and sometimes they don't. And I'm asking you if there was the paperwork for it. There was, Your Honor. There was. But again, only the first two amendments to the credit agreement are part of the record, so I want to be clear about that. We offered all of the other forbearance agreements, but there was an objection to authenticity, therefore the trial court did not feel like it could take judicial notice of those. I wouldn't think that you'd have any of that stuff on a 12B-6. I would think it would all be on summary judgment that it would come in. Well, I mean, there is in the 12B-6 standard you can't ask the court to take judicial notice of documents that are clearly identified in the four corners of the pleading. But again, because there was an objection to authenticity, those were not considered by the court.  Thank you, counsel. Thank you, Your Honor. Mr. Butler? Thank you, Your Honor. First, you asked me to give you the case site. I'm actually going to... I didn't complete at that point, so... Okay, well, I want to read from the appellee's brief. It says, An analysis of California intentional interference principles therefore represent an authoritative and binding statement of the law for all federal courts in the circuit, absent a clear indication from the California Intermediate Courts of Appeal that it misconstrued California law. And they cite United States v. Rodriguez-Lara. That's on page 15 of the... He already ceded. Okay. He ceded that point. All right. The issue here is that we don't even have the contract before the court on this 12B-6 because we don't know whether what they proffered was part of the contract or not. So we don't even know whether there was a breach, whether the developer or RE Loans was in default. We contend that there were wrongful actions by Wells Fargo, and wrongfulness is not just a question of whether there was a breach of their contract. They could do plenty of things that were wrongful that wouldn't necessarily violate the terms of their contract with RE Loans. And so we can't apply the question of privilege without knowing what the facts are here. And we don't even know what the agreement is, much less everything else that Wells Fargo may have done. But they have conceded that they knew that Mr. Eng was to be paid when they entered into this whole arrangement, and then they changed their mind. Part of the problem here is that they also benefited from Mr. Eng's performance because they got a new customer as a result of what Mr. Eng did. And so I don't understand how all of a sudden they get to take those benefits and enjoy them and then cut Mr. Eng out of the deal just because they'd rather have the money themselves. They may have had a priority lien, but that's not the same thing as a priority payment. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel for your helpful arguments in this case. The case is submitted for decision.
judges: Kleinfeld, Rawlinson, Nguyen